```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ALAN ANDRUS,

                        Plaintiff,
                                        MEMORANDUM, DECISION &
         -against-                      ORDER AFTER BENCH TRIAL
                                        08-CV-1900(JS)(AKT)
JUNIPER GROUP, INC., JUNIPER INTERNET
COMMUNICATIONS, INC., and VLADO P.
HRELJANOVIC,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:          Paul D. Wexler, Esq.
                        Bragar, Wexler & Eagel, P.C.
                        885 Third Avenue, Suite 3040
                        New York, NY 10022

For Defendants:
Juniper Group, Inc.,    Jay R. McDaniel, Esq.
Vlado P. Heraljanovic   McDaniel Law Firm PC
                        54 Main Street
                        Hackensack, NJ 07601

Juniper Internet        No appearances.
Communications, Inc.
```

SEYBERT, District Judge:

Plaintiff Alan Andrus ("Plaintiff" or "Andrus") commenced this diversity action against Defendants Juniper Group, Inc. ("Group"), Juniper Internet Communications, Inc. ("Communications"), and Vlado P. Hreljanovic ("Hreljanovic," collectively, "Defendants") seeking recovery of unpaid wages and stock grants. Defendant Communications defaulted, and a bench trial was held on March 2 and 3, 2011 with respect to Defendants Group and Hreljanovic. The Court now issues its findings of

fact and conclusions of law, as required by Federal Rule of Civil Procedure 52(a), and after carefully considering the evidence introduced at trial, the arguments of counsel, and the controlling law on the issues presented, finds in favor of Defendants Group and Hreljanovic and enters default judgment against Defendant Communications.

## PROCEDURAL BACKGROUND

On May 9, 2008, Plaintiff filed the Complaint in this action seeking to collect from Defendants $105,077.85 in past-due wages and unreimbursed expenses and $90,000 for the value of stock grants that he alleges should have been issued pursuant to his employment agreement but never were. Specifically, Plaintiff asserts: (1) that Group and/or Communications breached Plaintiff's employment contract by failing to pay $105,077.85 in past-due wages and unreimbursed expenses; (2) that Plaintiff is entitled to recover the $105,077.85 from Group and Communications under a quantum meruit theory; (3) that Plaintiff is entitled to recover the $105,077.85 from Group and Communications under an unjust enrichment theory; (4) that Hreljanovic, the Chief Executive Officer of both Group and Communications, breached an oral agreement to pay Plaintiff $90,000 out of his own pocket to compensate him for stock grants that should have been issued by Group and/or Communications; and (5) fraud against all Defendants for falsely representing to

2

Plaintiff that he would eventually be paid. Both Group and Hreljanovic appeared in this action. Communications defaulted. On September 11, 2009, Plaintiff moved for a default judgment against Communications. The Court denied Plaintiff's motion without prejudice to renewal after the trial against the non-defaulting Defendants. On March 2 and 3, 2011, the Court presided over the two-day bench trial, after which Plaintiff renewed his application for a default judgment against Defendant Communications.

## FINDINGS OF FACT

Based on the evidence and arguments presented, the Court makes the following findings of fact pursuant to Federal Rule of Civil Procedure 52(a).[1] These findings of fact are drawn from witness testimony at trial ("Tr."), the parties' trial exhibits ("Ex."), and undisputed facts submitted by the parties in the Joint Pre-Trial Order ("PTO").

I.  Plaintiff's Employment Agreement

In or about January 2001, Plaintiff was hired by Hreljanovic to serve as the President of Communications. (Pl.

---

[1] To the extent that any of the findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Likewise, to the extent that any of the conclusions of law may be deemed findings of fact, they shall be considered findings. See Miller v. Fenton, 474 U.S. 104, 113-14, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985) (noting the difficulty, at times, of distinguishing findings of fact from conclusions of law).

3

Ex. 1 at 17; Tr. 160-61.) Communications, a company specializing in providing technology and internet services to leading internet-broadband service providers, is a wholly-owned subsidiary of Group, which is a publicly owned corporation. (Pl. Ex. 1 at 4; Tr. 68, 161-62.) At all relevant times, Hreljanovic was CEO and sole Board Member of Communications and the CEO and Chairman of the Board of Group. (Tr. 156, 163-64, 202-04.)

The Court finds that Plaintiff was employed at all relevant times by Communications, and never directly by Group. Plaintiff submitted all time records and reimbursement requests to Communications, not Group (Def. Ex. C), and he received Form W-2s from Communications in 2003 and 2004 (Def. Ex. E, F). Plaintiff asserts that in early 2005 he became the Chief Technology Officer of Group, but the Court finds that the facts do not support such an assertion: The Form 10-KSB that Plaintiff relies on in support actually indicates otherwise-- that he remained at Group but his title changed to Chief Technology Officer (Pl. Ex. 2 at 12)[2]--and he received a Form 1099 from Communications reporting non-employment income in 2005 (Def. Ex. D).

---

[2] The Form 10-KSB identifies Plaintiff as the Chief Technical Officer at Juniper. The form refers to Group as the "Company" and to Communications as "JCOM" or "Juniper." (Pl. Ex. 2 at 2.) Plaintiff appears to have misread the form and misunderstood his role in the companies.

4

No formal employment agreement was ever prepared or signed during the course of Plaintiff's employment with Communications; however, the Court finds that the terms of Plaintiff's employment with Communications originally included a salary of $200,000 per year and options to purchase 100,000 shares of Group common stock "to be earned as certain benchmarks [were] achieved over a two-year period." (Pl. Ex. 1 at 19; Tr. 72.)

Plaintiff, however, asserts that his original employment agreement included stock grants, rather than warrants or options (Tr. 69, 78, 124), but the evidence overwhelmingly disproves this assertion. Group's 10-K form filed with the Securities and Exchange Commission in 2004, which Plaintiff stated that he helped prepare (Tr. 73), indicates that he was offered stock options, not grants (Pl. Ex. 1 at 19). This is confirmed by Hreljanovic's testimony: "The only stock grant that I was aware of was the initial stock grant that we provided, we indicated to him at the inception of the--our relationship [that] we were going to give [Plaintiff] 100,000 warrants at a dollar 20." (Tr. 184 (emphasis added).) And Plaintiff's own testimony about the alleged stock grants is inconsistent and confused. (Tr. 69 ("I was offered 90,000 shares of stock grants . . . ." (emphasis added)); id. 124 ("Q. So the deal was for you to come to work at the Juniper Group of

5

companies, $200,000 a year. Correct? A. Correct. Q. And $90,000 of stock incentive, correct? A. Stock grant." (emphasis added)); Pl. Ex. 6 (2003 email from Plaintiff to Hreljanovic summarizing a discussion they had regarding his compensation: "Andrus will be granted 100,000 shares of common stock of Juniper Group, Inc. Stocks will be unrestricted and issued without cost to me." (emphasis added)).) Thus, the Court finds that Plaintiff was promised options to buy 100,000 shares of common stock, not a grant of 90,000 shares or stock valued at $90,000. Additionally, these options were not guaranteed, but were "to be earned as certain benchmarks are achieved over a two-year period." (Pl. Ex. 1 at 19; see also Tr. 165 ("Q. Was it understood that [Plaintiff's] compensation, in terms of equity incentives, was going to be tied to anything? A. Oh, absolutely.").) There was no testimony or evidence indicating that Plaintiff ever exercised his stock options.

In or around February 2002, Plaintiff's salary was temporarily reduced to $150,000 per year, and in or around February 2005, Plaintiff's salary was again reduced to $90,000 per year when he went part-time. (Tr. 78; Pl. Ex. 4.) In addition, as part of his employment agreement, Plaintiff was to be reimbursed for all out-of-pocket expenses incurred in the performance of his duties. (Tr. 87; Pl. Ex. 10.)

6

II.     Hreljanovic's Personal Guarantee

In addition to asserting that his employment agreement included a grant of 90,000 shares of Group stock, Plaintiff alleges that Hreljanovic personally guaranteed that Plaintiff would receive $90,000 for the value of the stock. (Tr. 125 ("He committed to me that from the corporation, or from his own personal holdings of stock, he would insure that I received $90,000 in value from that stock that I had been granted.").) In support, Plaintiff points to two documents that he prepared: (1) a draft memorandum to Hreljanovic dated March 24, 2003 that states that there is $90,000 in incentives outstanding (Pl. Ex. 4) and (2) an email to Hreljanovic dated April 28, 2008 that mentions "the stock issue of $90k outstanding" (Pl. Ex. 5). Hreljanovic denies any such personal guarantee. (Tr. 182-83.)

The Court finds that Hreljanovic made no such personal guarantee.  <u>First</u>, Plaintiff asserts that Hreljanovic only personally guaranteed to pay him $90,000 for value of the stock; yet, the documents that he refers to in support summarize <u>all</u> monies due and owing from Communications--unpaid incentives, back pay and expenses--not just the monies personally guaranteed by Hreljanovic. There is no indication in either document that the $90,000--one item in a list of many--was to be paid by Hreljanovic personally.  <u>Second</u>, the Court has already found that Plaintiff's employment agreement did not include a grant of

7

90,000 shares of stock or $90,000 worth of stock; therefore, there was no debt for Hreljanonvic to personally guarantee. <u>Third</u>, Plaintiff's testimony regarding such an alleged oral agreement is inconsistent and not credible. (Tr. 124 (asserting that promise was made in 2002); Tr. 126 (asserting that the promise was made in 2001); Tr. 83-84 (asserting that the promise was made in 2005).)[3] <u>And finally</u>, such an undisclosed agreement --where the CEO of a publicly-traded company personally and secretly agrees to indemnify the President of the company against losses caused by a drop in the value of stock owed to him by the company--is illegal. <u>See, e.g.</u>, 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14(a); 17 C.F.R. § 229.402(k). Thus, the Court finds that Defendant's version of the facts is more credible, and that no such personal guarantee existed.

III. <u>Plaintiff's Departure</u>

Communications was never profitable. (Tr. 128-129.) Communications fell significantly behind in its wages and reimbursements to Plaintiff in 2002 and 2003, but it eventually paid him back with common stock issued by Group. (Tr. 76-77,

---

[3] Plaintiff pled entirely different facts in his Complaint--that he did in fact receive 327,723 shares of Group stock pursuant to his initial employment agreement, but that those shares were rendered worthless as a result of a series of reverse stock splits. So Hreljanovic "promised [P]laintiff that Hreljanovic would take all steps necessary to enable Andrus to receive $90,000 for his stock grant, including paying him the $90,000 out of his own pocket if market sales were insufficient to generate that amount of cash." (Compl. ¶ 20.)

8

222.) Communications fell behind again in 2004. (Tr. 80.) Plaintiff repeatedly spoke to Hreljanovic about the unpaid wages and expenses, and Hreljanovic assured him that he would get paid as soon as there were funds available. (Tr. 80.) However, during this time, Communications was terminated by its biggest client (Tr. 132-34), and ultimately Plaintiff was never reimbursed (Tr. 80). He resigned in April 2005. (Pl. Ex. 5; Tr. 186.) At the time he resigned, Plaintiff was owed $105,000 in unpaid salary and expenses. (PTO ¶ 7; Pl. Exs. 9-10.)

## CONCLUSIONS OF LAW

Plaintiff asserts the following causes of action: (1) breach of contract against Communications and Group for unpaid wages and expenses; (2) quantum meruit and unjust enrichment against Communications and Group related to the unpaid wages; (3) breach of contract against Hreljanovic related to the alleged stock grants; and (4) fraud against all Defendants. The Court will first address whether Plaintiff has satisfied his burden with respect to Defendants Group and Hreljanovic. The Court will then turn to Plaintiff's motion for default judgment against Defendant Communications.

I.  Claims Against Group and Hreljanovic

   A.  Unpaid Wages

Plaintiff seeks to recover $105,077.85 in unpaid wages and expenses from Group under three different theories: (1)

9

breach of contract, (2) quantum meruit, and (3) unjust enrichment.

### 1. Breach of Contract

To recover for breach of contract under New York law, Plaintiff must prove: (1) the existence of a contract, (2) Plaintiff's performance under the contract, (3) Defendant's breach of the contract, and (4) resulting damages. See Palmetto Partners, L.P. v. AJW Qualified Partners, L.L.C., 83 A.D.3d 804, 806, 921 N.Y.S.2d 260, 264 (2d Dep't 2011); First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998). "To establish the existence of an enforceable agreement, the plaintiff must demonstrate 'an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.'" Beautiful Jewellers Private Ltd. v. Tiffany & Co., No. 10-CV-3039, 2011 WL 4337108, at *1 (2d Cir. Sept. 16, 2011) (quoting Kowalchuk v. Stroup, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43, 46 (1st Dep't 2009)).

Plaintiff has failed to establish that Group breached any contract. The Court has already determined that Plaintiff was never employed by Group, and there has been no evidence to suggest that there was any separate employment agreement between Group and Plaintiff. Rather, Plaintiff argues that Group is liable for Communications' breach of the employment agreement because Group, through Hreljanovic, so dominated and controlled

10

Communications that the Court should treat Communications as an alter-ego of Group, not as a separate legal entity. (Pl. Proposed Findings & Conclusions ¶ 8-12.)[4]

The Court finds, however, that Plaintiff is barred from arguing alter-ego liability. Plaintiff did not plead alter-ego liability nor did he disclose it as a possible theory of recovery in the Joint Pre-Trial Order. Rather, Plaintiff consistently argued that he was employed directly by both Group and Communications. (Compl. ¶ 6; PTO ¶ 8.) Then, on the morning of trial, Plaintiff raises alter-ego liability for the first time. Defendant had no notice that Plaintiff would argue alter-ego liability at trial and had no opportunity to conduct discovery with respect to that issue or develop a defensive strategy. Permitting Plaintiff to raise this new theory of liability at this stage in the litigation would unduly prejudice Defendants, so the Court will not address or consider the merits of this argument.[5]

---

[4] Plaintiff makes this argument in his post-trial submissions even though at trial he "remov[ed] the point," after defense counsel objected. (Tr. 7.)

[5] See Harrison v. Nw. Orient Airlines, Inc., 677 F. Supp. 131, 135 (S.D.N.Y. 1987) (refusing to consider theory of liability raised for the first time after joinder of issue on the pleadings, full discovery and the entry of a pretrial order because it "comes too late"); see also Villante v. VanDyke, 93 Fed. Appx. 307, 309 (2d Cir. 2004) (stating that in deciding whether to amend a pre-trial order the Court must "consider whether any prejudice to the opposing side will result" (internal quotation marks and citation omitted)); Henry v. Dep't

B. Quantum Meruit & Unjust Enrichment

"Applying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citing Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996)); accord Seiden Assocs., Inc. v. ANC Holdings, Inc., 768 F. Supp. 89, 96 (S.D.N.Y. 1991) (explaining that "quantum meruit and unjust enrichment are not separate causes of action"), rev'd on other grounds, 959 F.3d 425 (2d Cir. 1992). However, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." U.S. East Telecomms., Inc. v. U.S. W. Commc'ns Servs., Inc., 38 F.3d 1289, 1298 (2d Cir. 1994) (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987)).  Here, the employment contract with Communications, which governs Plaintiff's salary and his duties as President (and later Chief Technology Officer), bars recovery for unpaid wages under any quasi-contract theory of liability.

---

of Transp., 69 Fed. Appx. 478, 481 (2d Cir. 2003) (same); cf. Solinsky v. Arthritis Found., 635 F. Supp. 620, 622 (E.D.N.Y. 1986) (stating that issues not contained in the pre-trial order cannot be considered at trial).

12

II. Hreljanovic's Personal Guarantee

Plaintiff has also failed to satisfy his burden with respect to his breach of contract claim against Hreljanovic. Plaintiff asserts that, in exchange for Plaintiff's promise to remain employed by Communications, Hreljanovic personally guaranteed to satisfy Communications' debt of $90,000 for the value of the stock grants that were promised but never issued. The Court previously found that no such promise was made. Without an agreement, there can be no contract, and "[w]ithout a contract there can be no breach," Franklin v. Carpinello Oil Co., 84 A.D.2d 613, 613, 444 N.Y.S.2d 248, 249 (3rd Dep't 1981). Therefore, the Court finds that Hreljanovic is not liable for breach of contract.

III. Fraud

Finally, Plaintiff asserts that all Defendants are liable for fraud for repeatedly and falsely representing to Plaintiff that he would be paid what he was owed.[6] To state a cause of action for fraud in New York, Plaintiff must prove "a misrepresentation or a material omission of a fact which was false and known to be false by [D]efendant[s], made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material

---

[6] The Court notes that Plaintiff did not address his fraud claim in his Proposed Findings of Fact and Conclusions of Law.

13

omission, and injury." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178, 944 N.E.2d 1104, 1108, 919 N.Y.S.2d 465, 469 (2011) (quoting Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)).

"[W]here a fraud claim seeks to enforce no more [than] the breached promises and obligations of a contract . . . the claims are merely redundant and must be dismissed." R.H. Damon & Co. v. Softkey Software Prods., Inc., 811 F. Supp. 986, 992 (S.D.N.Y. 1993) (applying New York law). Here, the facts as asserted by Plaintiff amount to little more than Hreljanovic falsely stating that Defendants would perform under the employment contract. This is insufficient to support a claim for fraud in New York. See Bridgstone/Firestone, Inc. v. Recovery Credit Servs., 98 F.3d 13, 19-20 (2d Cir. 1996) (collecting cases).

To maintain a claim for fraud in such a situation, a plaintiff must: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Id. at 20 (citations omitted). Plaintiff's fraud claim meets none of these requirements, thus Plaintiff has failed to establish liability against any Defendant for fraud.

14

IV. <u>Default Judgment</u>

Defendant Communications never answered the Complaint, and on June 22, 2009 the Clerk of the Court noted the default.

A. <u>Liability</u>

The default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. <u>See</u> FED. R. CIV. P. 8(b)(6); <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992)). However, the fact that a complaint remains unanswered will not itself suffice to establish liability on its claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." <u>Said v. SBS Elecs., Inc.</u>, No. 08-CV-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), <u>adopted as modified</u>, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010). Therefore, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." <u>Id.</u>

Here, Plaintiff alleges four causes of action against Communications: (1) breach of the employment contract; (2) quantum meruit; (3) unjust enrichment; and (4) fraud. The Court has already determined that Plaintiff's quantum meruit, unjust

enrichment and fraud claims fail as a matter of law. See supra at 12-14. Plaintiff has, however, satisfied his burden with respect to the breach of contract claim. There was an agreement between Plaintiff and Communications that he would perform the duties of President of Communications in exchange for receiving $200,000 per year in salary (later $150,000, and eventually $90,000) and being reimbursed for all out-of-pocket expenses. See Beautiful Jewellers, 2011 WL 4337108, at *1 ("To establish the existence of an enforceable agreement, the plaintiff must demonstrate 'an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.'"). Plaintiff performed his duties as President and Chief Technology Officer of Communications, and Communications failed to pay Plaintiff his salary and expenses. See First Investors Corp., 152 F.3d at 168 (stating that to prove breach, Plaintiff must show the existence of a contract, Plaintiff's performance under the contract, Defendant's breach of the contract, and resulting damages.). Thus, Communications is liable for the unpaid salary and expenses.

    B.    Default

In determining whether to enter a default judgment, courts will consider: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-

16

defaulting party would suffer as a result of the denial of the motion for default judgment." Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); see also O'Callahan v. Sifre, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (finding that courts may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt" when deciding a motion for default judgment) (internal quotations marks and citation omitted)). Ultimately, the decision to grant a motion for default judgment is left to the sound discretion of the district court. See Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999) (citation omitted).

The Court finds that all three factors are met here. First, the failure of Communications to appear in the action and respond to the Complaint, despite being properly served, sufficiently demonstrates willfulness. Second, the Court is unable to determine whether Communications has a meritorious defense as no such defense has been presented. However, as previously explained, the Court finds that Plaintiff has established liability with respect to the breach of contract claim. Finally, denying this motion would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines,

17

L.L.C., No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008).

    C.    Damages

Although a default judgment entered on the well-pleaded allegations in the Complaint establishes liability, Plaintiff must still prove damages. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). The Court finds that Plaintiff has sufficiently proven that he was owed $105,000 in unpaid wages and unreimbursed expenses. (PTO ¶ 7, Pl. Exs. 9-10.)

Plaintiff also seeks pre-judgment interest running from May 9, 2009--the date this action was commenced. Pre-judgment interest in a diversity action is governed by state law. See Adrian v. Town of Yorktown, 620 F.3d 104, 107 (2d Cir. 2010). Under New York law, in a breach of contract action, Plaintiff is entitled to pre-judgment interest computed from the earliest ascertainable date that the cause of action existed at a rate of nine percent per annum. N.Y. C.P.L.R. 5001, 5004. Therefore, Plaintiff is entitled to interest in the amount of $25.89 per day from May 9, 2009 through the date of judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish liability of Defendants Group and Hreljanovic and all claims against them are hereby DISMISSED. Plaintiff's motion

for default judgment against Defendant Communications is GRANTED, and the Court awards Plaintiff a default judgment against Defendant Communications in the amount of $105,000 plus pre-judgment interest in the amount of $25.89 per day from May 9, 2009 through the date of judgment.

The Clerk of the Court is directed to enter a Judgment consistent with this Order.

SO ORDERED.

/s/ JOANNA SEYBERT          _
Joanna Seybert, U.S.D.J.

Dated:   September   26  , 2011
         Central Islip, New York